Jeffrey Willens, Counsel for the Plaintiffs. This is a class action against DirecTV for obtaining stored electronic communications in violation of the Stored Communications Act. The issue is whether or not DirecTV can be liable, even though it was not itself an Internet Service Provider, but in fact induced the Internet Service Provider to turn over the documents in violation of the law. So you concede we're not dealing with a person or entity providing an electronic communication service to the public? Correct. What we're dealing with That's what the statute deals with, and you're trying to put something in it that's not there. Well, it doesn't only deal with the Internet Service Provider. For instance, we cited a couple of cases where the government induced the Internet Service Provider to turn over documents to it in violation of the statute, and the government was held liable. That was under an aiding and abetting theory of liability. So it was a direct liability, if you read those cases carefully. I don't... In those cases, the Internet Service Provider violated the law, and it did so at the behest of the government. There is not a finding in those cases, as I read them, that says that the government's liability is only limited to direct liability versus aiding and abetting liability. The discussion of the intent behind the law makes it clear that privacy of the stored communications is the most important thing. And if the Internet Service Provider is not supposed to turn over the stored communications to a third party, whether it be the government or a private citizen, unless the law calls for it to do so, then the entire statutory intent would be completely undermined if the Internet Service Provider could be induced in some fashion to cooperate with either the government or the private party. And that's the concern I have here. Well, you have the Supreme Court telling us that, quote, if, as Respondents seem to say, Congress intended to impose aiding and abetting liability, we presume it would have used the words aid and abet in the statutory context. And the Supreme Court pointed out that Congress has done this on a couple of occasions. So here, they didn't. However, then that decision, the central bank decision, they were discussing an implied right of action under 10b-5 in the securities law. There have been other cases, and we cite them, where aiding and abetting or conspiracy liability has been found, even though the statute does not expressly state one way or another whether or not aiding or abetting. The central bank case has never been a blanket rule, and it's never been interpreted by this Court to be a blanket rule that there can never be aiding and abetting liability unless the words aiding and abetting or something along those lines are expressly used in the statute. What's your best case that you want me to read again before I decide this case? There's a recent case that just came out in late May. It's a state case, but it does address the Store Communications Act, and I'd like to invite this Court's attention to it. Well, let's ignore that. Of the cases that you've cited to us, which one do you think is dispositive? I think the Quigley case is definitely on point, because although it's a different section... Tenth Circuit? I believe so. Yeah. That's not the most persuasive case I've ever read in a lot of respects, but... At least it reaches the right result, from my position, at least, in this case. I think, though, that you have to take it step by step. There's no blanket rule against aiding and abetting liability just because it doesn't say the words. That's step one. Step two cases have found aiding and abetting liability, or conspiracy liability, if they find that that would fulfill the congressional intent. In this case, I think this is very important. We don't have a situation where, as in the Doe v. GTE case, where there's an innocent third party, the ISP, who doesn't have an ax to grind, an ox to gore, or any particular stake in the case. They're just going along with the process. What we have here is a third party, Direct TV, that induces or solicits a direct violation of law, we allege. And that's a separate matter, whether it is or not. That's not before us right now. But if they, in fact, do induce or solicit a direct violation, and they personally benefit from that, to hold that they cannot be liable, while the ISP, who is defendant in this case, but cannot be served, he's in the wind somewhere. There's a lot of small ISPs, as we know these days. Not everybody's AOL or Yahoo and is going to fight subpoenas or whatever. Some of them have no choice but to simply submit or cut a deal. And that's what this guy did. It's just an individual. He's got a small electronic bulletin board. He did not have the resources to fight Direct TV. They cut him a deal. They said, you turn over your stored communications to us, even though the court order did not authorize that to happen at that point in time. And, you know, we'll give you some leniency in terms of, assume you. Here's a question I wondered about as I read this. Do you need the Stored Communications Act as a cause of action? Aren't there other causes of action you could pursue? I haven't been able to find any. I suppose you could pursue a breach of contract action, but the problem is Direct TV is not a party to the contract. The ISP is a party to the contract. So then you'd have to pursue inducing someone to breach a contract. And I haven't been able to establish that there's a contractual relationship whereby the ISP contracted to keep the documents private. So maybe that might be an alternative. I don't know. I'm just sitting here. As I read this thing, I was thinking of all the business torts and third-party benefits. I mean, all those things were running through my mind because it seemed like you had this particular federal statute that had a very specific focus, which made me think, what about all the other business torts you could think of? So I just ask you, I guess you think, in your view, this is really kind of the death knell of your case, is your concern? Without revealing any big secrets, yes. This is the law that actually has some teeth to it. A contract action of some sort, these people are not going to be able to show any damages arising from their disclosure of their stored communications other than the most intangible of kinds, and it's going to be very hard to certify a class. The advantage of this law is it contains a statutory penalty. It does have an attorney's fee provision, so it makes economic sense to try to enforce this law. But I think all the people whose electronic communications were disclosed, hundreds or thousands of them, are essentially going to have no remedy at all unless it's going to be under this statute. And if that remedy can be defeated simply by pressuring the ISP to turn over the stuff without fighting it in court, then the law is worthless, unless you're Yahoo or America Online. Well, you could, of course, Congress, if that's what Congress could be persuaded of, they could amend the statute. The difficulty I keep coming back to is thinking that maybe they didn't have the full landscape when they enact this, and if you go back and you think about when these were enacted, everybody was worried about ISPs, basically, and that was sort of the issue du jour when all this came up. So then we have this very specific language, electronic service providers. How do you get around that? Those are two different sections. Right. 2702. 2702. 2702 defines the obligations of an ISP or an electronic service provider, internet service provider, whatever you want to call it. It doesn't define the scope of liability. 2707 defines the scope of liability. But what defines what is a violation? Because that's what there has to be. 2702 defines what is a violation. Correct. 2707 defines who can be liable for a violation. Yes. And it does not... Someone who engages in the conduct. Who engages in the violation, correct. Engages in the violation. And in the Supreme Court case that we have a problem with, in Justice Kennedy's opinion, it said that aiding and abetting is broader than engaging in. It's just sort of this concept of stacking comes in. In the central bank case, there was only an applied right of action at all. And the court said to go one step beyond that to infer aiding and abetting on top of an implied right of action was what they call stacking. That's all true. But he also said the problem, of course, is that aiding and abetting liability extends beyond persons who engage even indirectly in a prescribed activity. That's why I think aiding and abetting should be limited in this case. We're not talking about people who... We don't want to go beyond people who indirectly. And that was the concern there to accountants and lawyers and things like that. We're talking about the person who induced the violation. That kind of brings to mind intellectual property concepts in terms of secondary liability. And it seems like there you're... We would have to make a judicial creation of that doctrine, wouldn't we? I think what you're doing is you are recognizing that the congressional intent envisions not the full scope of possible aiding and abetting liability, but something less than that, but more than just the one offender. But that's where I kind of get stopped because if I look at the statute, if it's not unclear, I wouldn't go to intent. But let's just say we decided to go to intent. The rule you propose is a logical-sounding one. But you want a cabinet because you don't want it to be too unreasonable. So the only way you could create that rule, it seems to me, would be judges kind of making a subsidiary law under the Stored Communications Act. No, I think, first of all, I find the language engages in the violation to be broad enough to encompass someone who solicits the violation and who receives the stolen property, so to speak. I think that is reasonably, you couldn't rule that out out of hand. It could reasonably be within the scope of what Congress intended. So that allows us to take a look at Congress's intent here. And since the paramount concern is privacy, and they go to great length to try to discuss that, and that's why I wanted to mention, if I can, this O'Grady case that came out May 26. It's a state court decision, and if I may, I'd like to just give you this. Have you given opposing counsel the courtesy of telling him about this case? I haven't, Your Honor. It's not very good practice. It is, and he's very sharp, though. I'm sure he's already aware of it. He looks like it. He probably is. If you want, I can submit it later by letter or something. It does address the congressional intent for the Stored Communications Act. You told me earlier that Quigley is your best case, and the problem with your brief is that you have an ellipsis in the quotes from the Quigley case, and you left out a very important part of the Quigley case, and that is the initial problem with the argument that it wasn't asserted in district court, thus the issue has been waived barring plain error. After review, we conclude that the ADO has failed to satisfy this extremely high burden. So the holding in the case is we're not going to address this at all. Then in dicta, they wander around with some further stuff, but it isn't very persuasive to leave out in the ellipsis the holding of a case that you say is your most important one. Well, I wasn't trying to leave out anything that... I warn my law clerks, whenever you see ellipsis, read it, because lawyers have left it out for a reason. The space, conservation of space, I can assure you, was the only reason, but I don't agree that the analysis in Quigley is unpersuasive, but obviously that's for your honors to decide. And I really don't think I need to go as far as Quigley, because what we're talking about here is not a... The usual argument is that the definition of engages in is less broad than aid and abet, but is broad enough to comprehend persons who aren't providers but work so closely with providers that they're part of the act. Essentially, control the provider. That's exactly what we've alleged in this complaint is you've got a billion dollar corporation against a guy in Canada who operates a garage business, basically. And DirecTV storms through the building with its Canadian world mounties or whatever, seizes... Anton Piller. Anton Piller, the guy probably didn't have the lawyers in the country hear that, much less... We're going to have those in a minute, as soon as the administration finds out about it. All the people who practice near the Canadian border know these orders. Well, in any event, the end result of all that was DirecTV wasn't satisfied to go through the process of working its way through the Canadian system. They took a shortcut. They went to the guy and they said, look, we'll cut you a deal if you just give us the stuff and agree to sign it over without fighting this any further. And he did. Who can blame him? He's one guy against a corporation with fine counsel like my colleague here and many other attorneys going up against him. And he couldn't... And there's lots of small bulletin boards and people like that who cannot possibly afford to fight big corporations. Now, just recently in the paper we've seen about Yahoo and some of the other ones... Is there any definition of the term engage in that would include more than the person whose conduct is prohibited? Someone who twists his arms in doing it. No, no, not I don't mean to make up one. I mean is there any definition you rely on? A definition in a case? In a statute? Somewhere that defines engage in the way you do? No, I haven't found a... There's no definition. There's no case analyzing the definition engages in this particular statute. Any statute. You rely on... Yes, I cited Oregon breach of fiduciary duty Supreme Court decision where they're talking about inducing someone to breach his fiduciary duty to his client and the court found that there's liability for that. Certainly on the state side aiding and abetting is much more automatic in the sense of than it is in the federal law. I recognize that. There's no common law. You're trying to rely on the words of a statute that doesn't seem on its face to include this party. It seems to include persons who violate the statute and the ones who violate the statute are the providers. But in order to get beyond that it would seem to me your argument is that the statute applies to anyone who engages in this conduct and you're saying that means more than the party who's prohibited in the other section. So is there some definition of the term engages in that you think shows that this statute gave broader coverage? The definition of engages that I'm asking this court to imply is only inferred from congressional intent discussing the in particular the analogy which I find to be very good which is used in this in a case which I won't cite because it wasn't provided to counsel but what I suggest to you sort of an independent thought then would be as a data bailey a data bailey. In other words this internet service provider, this electronic store communications provider should be empowered with the ability to resist attempts through the civil discovery process to get the information from him. The civil discovery process should be utilized in the proper fashion to get the information from one of the two parties to the transaction but not to attack the guy who happens to just be storing the information and that was congress's intent in providing all these protections as well as penalties to the behalf of the internet service provider but all those protections are worthless if the person is too small to be able to assert them and if a big company can induce him or force him basically twist his arm into violating the law. You could say well that's too bad congress didn't think that could happen and so be it. Maybe you've got a criminal problem. Well it would be a criminal this is a criminal law too. There's criminal penalties for this and soliciting a crime is itself a crime or at least should be. Well and maybe there's when I asked you if you had other avenues maybe you've now found. Well I don't have a civil cause of action for soliciting a crime unfortunately under this scenario. I think too you've pointed up of course we have in the federal criminal law a very specific secondary liability statute so in the criminal context you can kind of land squarely in your argument and it seems to me somewhat persuasive that knowing that you can write a law that way congress didn't write this one this way. What is your response to that? Congress wrote this law before the central bank decision came out so I think it's presumptuous to think congress was thinking about a supreme court decision that hadn't even come out yet aiding and abetting liability was used in securities cases all the time until the supreme court put a stop to that so what we're really talking about is why hasn't congress gotten around to amending the law but if we start getting around to why hasn't congress gotten around to amending laws to reflect later decisions I don't think you can draw any conclusions from that. Congress is very busy and we can't wait for congress to change every law for future situations when congressional intent gives meaning to the language they use I think it's within the judiciary's right and obligation to breathe life into laws to reflect the current situation and certainly as long as it's within the realm of what congress intended and that's what I'm asking this court to do. I'm simply asking this court to look at the language and to agree with me that engages in a violation is not just the person who directly commits it but can include someone who forces the violation to occur and then benefits from it if someone's simply a puppet whose strings are being pulled and then you're going to say cut the strings the guy who's pulling the puppet master is not liable. That's essentially what directives position is here I don't agree that that's what congress intended and I don't think you're rewriting a statute to simply on a case by case basis and dealing with the facts of the case we have here to extend the concept of engages in a violation. Now I haven't seen any case from them where they say that it's absolutely prohibited whenever the term engages is used it only means the person who directly committed it and not anyone else who possibly played an important role. We've gone over time and we'll give you another two for rebuttal. Thank you I'll reserve that. Good morning Your Honor it's Michael Williams on behalf of Respondents Direct TV and ICG. As you may have noticed my colleague Mr. Williams and I have known each other for a while we have somewhat of a history. This is one of many class actions that he has tried to bring against Direct TV arising out of their anti-piracy campaign this time trying to read in language into a statute which congress never intended. As the court is well aware the focus starts with the plain language of the statute. Central Bank says you look at the statute and in fact in Central Bank that was dispositive alone in their eyes however they went on to talk about the other factors. Here. They even were kind to the 9th Circuit in Central Bank if I remember the case. I believe that is true. Here the language of section 2702 of the Electronic Communications Privacy Act cannot be any more clear as to who is a potential defendant. When was this act, when was this enacted? 1986 I believe Your Honor. And it states clearly a person or entity providing an electronic communication service to the public. And as my colleague conceded he is not contending that Direct TV nor ICG fits within that category. However that is the entire class of defendants that could violate this provision. And in fact to touch on a point that Your Honor Judge Reinhart made, aiding and abetting is much broader than other forms of liability. Not only did the Supreme Court recognize that it's broader than directly or indirectly engaging in the violation of the Central Bank but this provision is even narrower than section 2711 of the same statute. Section 2711 of the ECPA imposes liability not just on a person who intercepts a communication but also anyone who to violate that statute. That sounds a lot like the theory that my colleague is now advancing he would like to read into 2702 this notion that you can force someone or procure someone to commit a violation. However notably it's contained within 2711 but not within 2702.  in the GTE case found that that broader language procuring a violation still does not reach as broadly as to impose aiding and abetting liability. That was the holding of GTE. It looked at this language saying procuring any other person and it said you can't read that in. As Judge Easterbrook explained, a statute that is precise about who can be liable should not be read to create a penumbra of additional but unspecified liability. And the liability in 2702 is even more narrow than that in 2711. If Congress didn't intend 2702 to reach as far as procuring another to violate, it surely could not have intended to include aiding and abetting or conspiracy liability. Is your client as much of a thug as we're told your client is? Well, Your Honor, there was a point raised about a possible extortion claim and whether plaintiffs may have that. In fact, that theory has been tried and just a few months ago this Court and other panel affirmed another dismissal of a class action against one of my colleague's class actions saying that DirecTV was engaged in some massive extortion RICO campaign as part of its anti-piracy. That was Sosa versus DirecTV which was a published opinion. Courts have repeatedly found that DirecTV's actions in pursuing litigation against people accused of stealing a signal is properly protected under the First Amendment. The other factor is if you I realize that his clients may have a particular viewpoint but in principle what he's arguing is not that you can't go after people but you can't get the information in the way you got it so that you can then go after the people. There is a subtle difference a subtle distinction there. Well I think that distinction is irrelevant for purposes of statutory construction but to look behind that and what really happened here DirecTV went into a Canadian court got a valid Canadian court order that allowed it to go in and seize this information seize the database and if you read the actual language of the order which is the excerpts of record page 25 it makes it very clear that they should turn over to the authorized persons which include DirecTV and their lawyers the websites the databases any data contained therein it provided that this information should be turned over pursuant to a court order so what plaintiffs are essentially arguing is that by seeking and enforcing a court order or by complying with a court order you've somehow violated the Electronic Communications Privacy Act. This is not a case where DirecTV knocked on their door and said you better turn over your database or we're going to sue you. That's not what happened. They were using the legal process. Now if counsel doesn't think that the Anton Pillar order was justified or that it was broader than it should have been or it had some other attack this isn't the proper form to attack it he should have gone back to the Canadian court and dealt with that. That was what Mr. Gray could have dealt with. So really and if you think about the expanse of aiding and abetting despite counsel's current attempt to limit that scope it is much broader than that. He's not just simply trying to get someone who twists the arm of the internet service provider to turn over the information. He has sued ICG which is the forensic computer firm that did nothing but copy the information pursuant to the court order. Well you're right there are policy issues that lurk behind this of which we are unaware of exactly the kinds of things that Congress ought to cope with before it decides to make this extension. You're right. And what Pellant's argument is it really boils down to one of policy and although we disagree with his interpretation of policy once again the Supreme Court and Central Bank made clear that the issue is not whether imposing private civil liability on aiders and abettors is good policy but whether aiding and abetting is covered by the statute. Exactly. Took the words right out of my mouth. And I also want to explain the structure that has been set up is not as unreasonable as Appellant's contend. First of all section 2701 of the Electronic Communications Privacy Act addresses persons who obtain unauthorized access to stored communications. That deals with one set of issues. 2702 imposes obligations on the service provider saying you cannot disclose this information except under these requirements. And 2703 deals specifically with the restrictions on governmental access and contrary to Appellant's contention the cases he relies upon, the McVeigh case and the Freedman case that involved governmental entities were not aiding and abetting theories. They were direct liability theories against the government under section 2703. And the reason you have more protection or more requirements imposed upon the government in this type of situation is very real risk that the government could try to influence an internet service provider to simply turn over their disclosures without following the proper procedure. That is why the rules are imposed upon the government and the government is required  the issue and the only issue involved in McVeigh and Freedman and contrary to Appellant's contention. I also want to just address counsel raised this issue with GTE and that they were the innocent intermediary in the Seventh Circuit case. That's not entirely correct. As the court actually started its opinion it explained that GTE had agreements with its providers, its customers not to turn over this information and it very well could have been in breach of that provision. However, the point of the matter is and the holding of the court in GTE was that you cannot expand the Electronic Communications Privacy Act to include aiding and abetting theory. Finally, the legislative history also confirms as quoted in our response brief, it made it clear that the application of 2702 was limited to electronic communications service providers. There's no indication anywhere and Appellants have not provided any that it meant to include aiding and abetting or conspirators to create a violence. The argument isn't apparently anymore that it means that it extends to aiding and abetting. It's a more limited argument which is more like your procuring argument that you can engage in if you're really almost like a direct participant. If you're inducing the direct participants the direct participants acting at your behest or your direction. So it's not that the argument isn't that it includes aiding and abetting. It's that you're engaging in the act if you're in a direct relationship with the person. Your Honor, I would first note that that has not, that theory has not been pled and has not been addressed in the briefs. However, the position of Respondents in this case serves to confirm that that theory would not fly under section 2702. If Congress could clearly put in procure any other person to commit a violation in 2711, they surely could have done it in and they did not. So even if plain appellants were to proceed on that theory, it should suffer the same fate. There's no indication that it's meant to include anyone other than the electronic communications service provider. Unless the Court has any further questions, I'll submit. Thank you. Thank you, Your Honor. Thank you. It isn't true that we didn't, we failed to raise this alternative theory. In fact, it was raised, it's in pages 30 and 31 of the opening brief and discussed in the reply brief. And we even cite a case where someone hired a hacker to break into a system and the argument was, well, only the hacker can be liable, not the guy who hired the hacker. And the Court in that Fisher v. Mount Olive Lutheran Church said that, no, you know, you're standing right there, the hacker's doing his job, you're getting away from the language of aiding and abetting that DirecTV is essentially completely controlling the actions of this guy and is essentially acting through him. The hacker case is not under this section, I assume. The which case? The Mount Fisher, the Fisher? No, it's not under this section at all. Didn't they say in that case that in the end, although they intimated there might be secondary liability under a different section, they said in the end it wouldn't matter and so they didn't really make a holding? It's persuasive. It's not determinative. That's certainly the case. There's nothing really determinative. Even the GTE case is distinguishable because that was an intermediary who did not benefit in any way from the violation while DirecTV, you know, controlled the violation, induced it and benefited by the violation. So there's a lot of cases out there, but nothing directly on point. That's why this is a case of first impression, interpreting whether or not someone can fall into the category of engaging the violation if they have such alleged, I mean this is all alleged, maybe it won't prove to be true, summary judgment or something, but at this point it's on the pleadings and the allegations are that they essentially control the actions of Mr. Gray in committing the violation. And I think in that limited sense and limited to these facts as pled, I think it's within the realm of reason to reverse and allow us to go forward with the case to develop it further. Thank you. The case just argued will be submitted. The final case for oral argument this morning is Janice v. Commissioner of Internal Revenue. Thank you. They can come if they want to hear a tax case.
judges: Reinhardt, Trott, McKeown